Tiffany **BLACKWELL**, **individually, and on behalf of all other similarly situated current and former employees of Defendants in the State of California, Plaintiffs,**

v.

**SKYWEST AIRLINES, INC., a Utah corporation, and DOES 1 through 100, inclusive, Defendants.**

**No. 06cv307 DMS (AJB).**

United States District Court, S.D. California.

Aug. 30, 2007.

Gregg Lander, Law Offices of Kevin T. Barnes, Los Angeles, CA, John P. Dorigan, Law Office of John P. Dorigan, Indio, CA, for Plaintiffs.

Amanda C. Sommerfeld, Winston and Strawn, Los Angeles, CA, for Defendants.

## ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

SABRAW, District Judge.

This matter comes before the Court on Plaintiff's motion for class certification. Defendant filed an opposition to the motion on June 25, 2007, and Plaintiff submitted a reply on July 27, 2007. The matter was heard on August 17, 2007, at which time the parties were represented by their counsel. Having carefully considered the pleadings and arguments of counsel, the Court respectfully denies Plaintiff's motion for class certification.

## I.

## STATEMENT OF FACTS

### A. The parties

SkyWest is a regional airline that operates commercial flights on behalf of United Air-

lines, Delta Airlines, and Midwest Airlines and their subsidiaries. Kestner Decl. at ¶ 3. Between January 3, 2002 and the present, SkyWest has operated United and Delta flights out of approximately 25 airport stations in California. The number of SkyWest employees at a given station ranges from 5 to 350 employees. Kestner Delc. at ¶ 11; Schultz Dep. 8:19–9:2. Each station is run by a station manager, with most stations having less than 20 employees. Opposition at 4. The hourly-paid employees are called "agents." During the class period, SkyWest employed at least 20 different categories of agents and five different categories of supervisors. Opposition at 5.

Plaintiff Tiffany Blackwell began working for SkyWest sometime in 2000 as an agent. Opposition at 6, n. 21. On November 29, 2002, Plaintiff was transferred from Redmond, Oregon to Palm Springs, California, where she remained until December 1, 2004. Blackwell Dep. at 210:8–23; 229:21–231:19. In Palm Springs, she started as a Cross–Utilized Agent and later became a Baggage Service Agent shortly after May 2004. Sanchez Decl. at ¶ 13; Blackwell Depo. at 277:24–278:8. Plaintiff's duties as a Baggage Service Agent included assisting passengers whose bags did not arrive or were damaged, taking claim information from passengers and arranging delivery of bags to passengers. Sanchez Decl. at ¶ 8; Blackwell Depo. at 330:19–23. On December 1, 2004, Plaintiff took a leave of absence from which she did not return. Blackwell Depo. at 38:5–19.

### B. The Complaint

On January 3, 2006, Blackwell filed the current class action in San Diego Superior Court. SkyWest timely removed the action to this Court on February 9, 2006, pursuant to the Class Action Fairness Act of 2005. The Complaint alleges six claims for relief under California law: (1) failure to pay overtime wages; (2) failure to provide adequate time for meal periods, or appropriate compensation; (3) failure to pay minimum wages; (4) unlawful deductions from wages; (5) unfair business practices in violation of Busi-

ness & Professions Code § 17200, *et seq.;* and (6) unfair business practices under § 17200. Plaintiff seeks to represent current and former hourly-paid employees of SkyWest who were employed in the State of California from January 3, 2002 to the present. Complaint at ¶ 4.

Among other things, Plaintiff alleges the following unlawful employment practices. First, due to flight delays and irregular operations, agents did not always receive meal periods, received meal periods of less than thirty minutes, and did not receive meal periods within the first five hours worked. From January 3, 2002 to Fall of 2006, agents who missed meal periods were not paid an additional hour of compensation. Plaintiff alleges that such practices violate Labor Code § 226.7 and Wage Order No. 9, which require that an employee be provided a meal period of no less than 30 minutes during the first five hours of work.

Second, Plaintiff alleges the meal-period violations are caused by the company's failure to keep accurate records of actual time worked, also an unlawful practice. Plaintiff claims that from January 3, 2006 to the Fall of 2006, most stations automatically deducted thirty minutes from agents' time cards for a meal period, and kept no records of the actual time and length of employees' meal periods. According to Plaintiff, such practices violate Labor Code § 226(a) and Wage Order 9 § 7(A), which mandate that every employer provide its employees an accurate itemized statement in writing showing, among other things, total hours worked by the employee.

Third, Plaintiff alleges SkyWest never complied with the detailed and rigorous requirements for the creation of a lawful Alternative Workweek Schedule ("AWS"). Employers may adopt an AWS of not more than ten hours per day within a 40 hour workweek without paying overtime. Wage Order 9 sets out the election requirements for implementing an AWS. 8 Cal.Code of Reg. § 11090(3)(c). SkyWest does not have a corporate AWS policy and each station implements the process on its own. According to Plaintiff, because SkyWest did not educate its station managers regarding implementa-

tion requirements, no station ever implemented a lawful AWS during the class period. Plaintiff alleges alternative workweek schedules were used at her station, as well as most other stations.

Fourth, Plaintiff alleges agents often work over eight hours per day as a result of voluntary trade shifts. SkyWest does not pay daily overtime for such trade shifts. In doing so, SkyWest relies on Wage Order 9(3)(N), which grants commercial airlines doing business in California an exemption to the daily overtime provisions of the Labor Code. The provision applies to airline employees who work over 40 hours but not more than 60 hours in a workweek due to voluntary shift trades. 8 Cal.Code of Reg. § 11090(3)(N). Plaintiff claims that nothing in Wage Order 9 exempts SkyWest from paying daily overtime for work performed over eight hours in a workday as a result of voluntary shift trades.

Finally, Plaintiff alleges SkyWest violated Labor Code §§ 221 and 224, which require that deductions from employee wages must first be authorized in writing by the employee. SkyWest allegedly has a policy of directly deducting the costs of various travel benefits from its employees' paychecks without express written authorization.

Based on these allegation, Plaintiff seeks to certify the following five classes:

1. *Meal Period Class:* All "Agents" who were not provided with a 30–minute uninterrupted meal period within the first five hours of any shift worked and who were also not paid one hour of pay at the employee's regular rate of compensation for each missed or short meal period between January 3, 2002 to the Fall of 2006.

2. *Wage Statement Class:* All "Agents" who did not receive accurate itemized wage statements reflecting total hours worked as a result of Defendant's "auto-deduct" meal period policy between January 3, 2002 to the Fall of 2006.

3. *AWS Class:* All "Agents" who were not paid overtime for work accomplished between the eighth and tenth

hours in a workday because Defendant designated these shifts as "alternative workweek schedule" shifts between January 3, 2002 to the date of judgment herein.

4. *Voluntary Shift Trade Class:* All "Agents" who were not paid overtime for work in excess of eight hours per workday because of Defendant's policy of not paying daily overtime for work performed as a result of a "voluntary shift trade" between January 3, 2002 to the date of judgment herein.

5. *Deduction Class:* All "Agents" who had portions of their wages withheld for travel benefits, even though they did not expressly authorize Defendant, in writing, to withhold said portions of their wages between January 3, 2002 to the date of judgment herein.

## II.

### LEGAL STANDARDS

A district court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Dukes v. Wal-Mart, Inc.,* 474 F.3d 1214, 1224 (9th Cir.2007) (citing Fed.R.Civ.P. 23(a)). "The district court must also find that at least one of the following three conditions are satisfied: (1) the prosecution of separate actions would create a risk of: (a) inconsistent or varying adjudications or (b) individual adjudications dispositive of the interests of other members not a party to those adjudications; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class; or (3) the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* (citing Fed.R.Civ.P. 23(b)).

The party seeking certification must provide facts sufficient to satisfy Rule 23(a) and (b) requirements. *Doninger v. Pacific Northwest Bell, Inc.,* 564 F.2d 1304, 1308–09 (9th Cir.1977). In turn, the district court must conduct a rigorous analysis to determine that the prerequisites of Rule 23 have been met. *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). If a court is not fully satisfied, certification should be refused. *Id.* It is a well-recognized precept that " 'the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.' " *Falcon,* 457 U.S. at 160, 102 S.Ct. 2364 (citation omitted). However, "[a]lthough some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a), it is improper to advance a decision on the merits to the class certification stage." *Moore v. Hughes Helicopters, Inc.,* 708 F.2d 475, 480 (9th Cir.1983) (citation omitted); *see also Nelson v. United States Steel Corp.,* 709 F.2d 675, 679–80 (11th Cir. 1983) (plaintiffs' burden "entails more than the simple assertion of [commonality and typicality] but less than a prima facie showing of liability") (citation omitted). Rather, the court's review of the merits should be limited to those aspects relevant to making the certification decision on an informed basis. Fed.R.Civ.P. 23, Advisory Committee Notes, 2003 Amendments.

## III.

### DISCUSSION

#### A. *Rule 23(a)*

##### 1. *Numerosity*

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." Fed.R.Civ. P. 23(a)(1); *Staton v. Boeing Co.,* 327 F.3d 938, 953 (9th Cir.2003). Plaintiff need not state the exact number of potential class members; nor is a specific minimum number required. *Arnold v. United Artists Theatre Circuit, Inc.,* 158 F.R.D. 439, 448 (N.D.Cal.1994). Rather, whether joinder is impracticable depends on the facts and circumstances of each case.

*Id.; see Johnson by Johnson v. Thompson,* 971 F.2d 1487, 1498 (10th Cir.1992) (whether the class is so numerous is a fact-specific inquiry; district court is granted wide latitude in making this determination).

Plaintiff estimates the five proposed classes will have a total of 2,651 members because notices were sent to that number of individuals regarding this lawsuit. Motion at 17–18. In response, Defendant argues Plaintiff has not met her burden of proving joinder is impracticable, and that "[e]vidence of *possible* membership in all of the classes combined is not evidence of numerosity in regard to *any* of the proposed classes." *Id.* (emphasis in original).

The proposed classes involve all California-hourly-based employees, the total number of which Plaintiff estimates to be over 2,651. Given the broad parameters of the proposed classes, the Court is satisfied all five classes involve potentially numerous members and joinder of all such individuals is impracticable. This element is satisfied.

### 2. *Commonality*

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). "Commonality focuses on the relationship of common facts and legal issues among class members." *Dukes,* 474 F.3d at 1225. This rule has been construed permissively. "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* "The commonality test is qualitative rather than quantitative—one significant issue common to the class may be sufficient to warrant certification." *Id.; see Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 625 (5th Cir.1999) (the test for commonality is met when "there is at least one issue, the resolution of which will affect all or a significant number of the putative class members.") Indeed, the necessary showing to satisfy commonality is "minimal." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir.1998). Commonality "ordinarily is considered in connection with the Rule 23(b)(3) predomi-

nance inquiry because the court can usually find at least one issue that can be said to be 'common under the liberal wording of Rule 23(a)(2).' " *Basco v. Wal–Mart Stores, Inc.,* 216 F.Supp.2d 592, 599 (E.D.La.2002).

#### i. *Meal Period Class*

▮ The Court agrees with Plaintiff that the Complaint presents at least one significant issue common to all class members. Plaintiff points out that one such issue is whether Defendant failed to pay one hour of wages for every missed, short or late meal period. Other issues include what procedure, if any, Defendant implemented to ensure that missed meal periods would be compensated. As commonality is not a high bar, this minimal requirement is satisfied.

Defendant argues Plaintiff "has failed to show that SkyWest has a common practice or policy resulting in missed, short or late meal periods." Opposition at 12. Defendant presents evidence in the form of deposition testimony showing that if it failed to pay any employee's missed, short or late meal periods, the failure resulted from individual circumstances, varied from station to station, and were caused by irregular operations. *Id.* at 12–16. This argument is unavailing because the alleged injury need not be caused by the same or identical policy to satisfy commonality. This requirement is minimal and may be met by showing that all class members share a common significant issue. A single common question (whether legal or factual) is good enough. Thus, even if the failure to compensate results from individual circumstances, commonality is not defeated. *See Hanlon,* 150 F.3d at 1019 ("The existence of shared legal issues with divergent factual predicates is sufficient.")

#### ii. *Wage Statement Class*

▮ Plaintiff contends most stations automatically deducted thirty minutes from agents' time cards for a meal period, and kept no records of the actual time and length of meal periods taken. According to Plaintiff, members of this class share at least one significant common issue: "Whether Defendant failed to provide accurate itemized wage statements to class members?" In addition,

resolution of the claim requires this Court to determine whether the failure to provide itemized wage statements violates Labor Code § 226(a).

Defendant disputes commonality on the grounds that "there is no nexus between some stations' use of an auto-deduct mechanism and an improper wage statement." Opposition at 16. To buttress its argument, Defendant offers 84 employee declarations, all stating that when agents or supervisors missed meals, a procedure was in place to correct the "auto-deduct." *Id.* at 17. This argument does not defeat commonality. Whether Defendant had in place a procedure to correct the auto-deduct does not negate the fact that common legal and factual questions exist. Moreover, whether there is a nexus between SkyWest's auto-deduct practice and improper wage statements is a merits-based inquiry inappropriate at this stage of the litigation. *See Blackie v. Barrack,* 524 F.2d 891, 901 n. 17 (9th Cir.1975).

### iii. AWS Class

■ Plaintiff argues this class presents at least one common question: "Whether Defendant's AWS legally justifies the nonpayment of daily overtime." Defendant argues commonality is not satisfied because Plaintiff admits "there is no uniformity among the stations with respect to the implementation and use of AWS." Opposition at 17. Only some stations use AWS. *Id.* And even at these stations, only some agents and supervisors actually worked an AWS. *Id.* Further, of the stations that used AWS, most conducted elections to decide whether to implement the program. *Id.* at 18. In general, each station determined for itself whether to offer AWS, who would be eligible for it, and what election procedures would be followed to implement the program. *Id.* Consequently, according to Defendant, there "is no commonality with respect to the implementation, or use, of AWS in SkyWest's stations." *Id.*

Again, SkyWest's arguments are unavailing because they assume commonality is destroyed if there are differences in how the stations implement and carry out AWS. In other words, Defendant contends commonality is satisfied only if all the stations employ AWS in the same manner, pursuant to a common corporate directive. However, not all questions of fact and law need be common to satisfy the requirement of commonality. *Hanlon,* 150 F.3d at 1019. Further, common questions need not predominate over individual ones to satisfy the requirement. *Id.* (Rule 23(a)(2) is more lenient than the related requirement in Rule 23(b)(3) that common questions of fact or law predominate). Because, as Plaintiff points out, all putative class members share at least one significant issue, Plaintiff has met her burden of establishing commonality.

### iv. Voluntary Shift Trade Class

■ As to this class, the Court must answer at least one question common to all class members: "Whether Defendant's voluntary shift trade policy legally justifies the nonpayment of daily overtime." Defendant does not dispute this element is met.

### v. Deduction Class

■ Plaintiff correctly notes commonality is met because the class presents the following common issue: "Whether Defendant legally deducted travel benefits from Agents' wages?" Defendant disagrees, although it does not dispute that this is a question common to all class members. Rather, Defendant claims commonality is not met because "not all travel costs are paid through payroll deduction," and "not every transaction requested payroll deduction or has a signed authorization." Opposition at 18–19. Defendant contends Plaintiff seeks to certify a class of "exceptions," rather than "a class where all individuals in the group were treated 'alike.'" *Id.* Defendant's arguments are more appropriately considered under Rule 23(b)(3), which addresses whether common questions predominate over individual inquiries.

### 3. Typicality

"Although the commonality and typicality requirements of Rule 23(a) tend to merge, each factor serves a discrete purpose. Commonality examines the relationship of facts and legal issues common to class members, while typicality focuses on the relationship of

facts and issues between the class and its representatives." *Dukes,* 474 F.3d at 1231. The rule sets forth a permissive standard: "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon,* 150 F.3d at 1020. Rule 23 "does not require the named plaintiffs to be identically situated with all other class members. It is enough if their situations share a common issue of law or fact and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief." *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.,* 917 F.2d 1171, 1175 (9th Cir. 1990). "The test of typically is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992) (citation and internal quotation marks omitted).

#### i. Meal Period Class

■ Plaintiff contends she "is a member of the putative Classes and possesses the same interests, suffered the same injury, and alleged identical violations to other Class Members." Motion at 20. Specifically, she argues she "was subject to the same haphazard meal period policies and irregular operations as the rest of the class members." Reply at 13. SkyWest disagrees, asserting Plaintiff's missed meal periods is unique, rather than typical of the putative class members, for two reasons. First, her experience as a baggage service agent at Palm Springs is unique because of circumstances present only at that station. Opposition at 20. In particular, due to heightened security procedures imposed after 9/11, baggage service agents at PSP were required to be physically present with passengers' luggage at all times. As a result, Plaintiff may have missed more meals than employees at other stations. *Id.* Second, her claim is not typical of other agents because she "caused any harm she claims to have suffered." *Id.* at 21. SkyWest argues Plaintiff missed meals because she "*disobeyed* oral directives from her

supervisor to take her meal periods." *Id.* (emphasis in original).

Plaintiff's claim is sufficiently typical of the class claim to satisfy Rule 23(a)(3). Her injury—missed meal periods with no extra hour of compensation—is the same as the injury of other class members. SkyWest's alleged failure to provide employees with a meal period in accordance with Labor Code § 226.7 and Wage Order No. 9, or, alternatively, to provide one additional hour of pay, is not unique to Plaintiff.

It is unclear whether Plaintiff's post-9/11 experience as a baggage service agent at PSP is significantly different from the experiences of similar agents at other stations. SkyWest has provided no evidence to support this assertion. Moreover, even assuming Plaintiff's experience at PSP is unique in that she missed more meals than other agents because she either failed to ask for assistance or did not follow directives, these differences do not destroy typicality. *See Hanon,* 976 F.2d at 508 ("Typicality refers to the nature of the claim ... of the class representative, and not to the specific facts from which it arose or the relief sought."); *O'Connor v. Boeing North American, Inc.,* 184 F.R.D. 311, 332 (C.D.Cal.1998) (The typicality prerequisite may be met "even though varying fact patterns support the claims or defenses of individual class members.")

#### ii. Wage Statement Class

■ Defendant contends Plaintiff lacks standing to bring a claim for inaccurate wage statement under Labor Code § 226(a) and therefore she cannot serve as a class representative for this claim. Opposition at 22. Recovery under § 226(a) constitutes a penalty and is therefore governed by a one-year statute of limitations under California Code of Civil Procedure § 340(a). To bring such a claim, Plaintiff would have had to receive an incorrect wage statement after January 3, 2005, since this action was filed on January 3, 2006. Plaintiff, however, worked for SkyWest only until December 1, 2004. In her reply, Plaintiff points out that although her last day was December 1, 2004, she remained an employee of SkyWest until at least February 11, 2005, and Defendant considered her

an employee until as late as August 17, 2005. Reply at 14. Plaintiff provides a copy of a pay stub dated February 11, 2005, in support of her contention. Motion, Ex. 4 at BLA0070. Alternatively, Plaintiff requests permission to conduct discovery to find a new class representative. Reply at 15.

The pay stub provided by Plaintiff indicates only that she received a part-time bonus in an amount of $272.35 on February 11, 2005; however, the pay stub also indicates that her work hours during that pay period are "0." At oral argument, SkyWest explained that Plaintiff experienced no harm within the one year statute of limitations because she did not receive a pay stub that allegedly failed to document exact work hours. Plaintiff does not dispute this argument. Plaintiff therefore lacks standing. *See Sosna v. Iowa*, 419 U.S. 393, 402–03, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) (a litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court.) Plaintiff's request for discovery to find a new class representative also is denied. *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018 (9th Cir.2003) ("[W]here the sole named plaintiff 'never had standing' to challenge a township's poor-relief eligibility guidelines, and where 'she never was a member of the class she was named to represent,' the case must be remanded with instructions to dismiss").

### iii. AWS Class

■ All potential members of this class appear to suffer from a similar injury (deprivation of overtime wages) resulting from SkyWest's allegedly defective implementation of an AWS program. Defendant does not dispute this contention.

### iv. Voluntary Shift Trade Class

■ Defendant contends Plaintiff has not demonstrated she was denied daily overtime under Wage Order 9(N), and thus lacks standing. Opposition at 22. Wage Order 9(N) creates an exception to overtime compensation for hourly-based airline employees, by providing:

> The provisions of this section shall not apply where any employee of an airline certified by the federal or state government works over 40 hours but not more than 60 hours in a workweek due to a temporary modification in the employee's normal work schedule not required by the employer but arranged at the request of the employee, including but not limited to situations where the employee requests a change in days off or trades days off with another employee.

8 Cal.Code of Reg. § 11090(3)(N).

According to Defendant, under this exception, airline employees who work over 40 hours but no more than 60 hours in a workweek due to voluntary shift trades are not entitled overtime compensation. *Id.* Plaintiff disagrees, and accuses Defendant of making a merits-based argument. Reply at 15.

The Court agrees with SkyWest that Plaintiff has not demonstrated she is a member of this class. To determine whether Plaintiff is a class member, the contours of Wage Order 9(N)(3) must be addressed. Under this section, a plaintiff is not entitled to overtime compensation if she worked above 40 but not more than 60 hours in a week as a result of voluntary shift trades.[1] Plaintiff has not demonstrated that SkyWest did not compensate her for hours worked over 8 hours per day when her total hours per week were either below 40 or above 60. Rather, the evidence (*e.g.*, shift trade adjustment forms—BLA0042 & BLA0044) provided by Plaintiff merely indicates she worked voluntary shift trades. This is not sufficient. She must demonstrate SkyWest did not compensate her for overtime even though her shift did not fall under the exception of Wage Order 9(3)(N). Absent this showing, Plaintiff may not serve as a class representative. *See Sosna*, 419 U.S. at 402–03, 95 S.Ct. 553 (a "litigant must be a member of the class which he or she seeks to represent at the

---

1. Contrary to Plaintiff's contention, an inquiry into the contours of Wage Order 9(N)(3) is appropriate at this stage of the litigation. *See* Fed. R.Civ.P. 23, Advisory Committee Notes, 2003 Amendments (court review of the merits should be limited to those aspects relevant to making the certification decision on an informed basis).

time the class action is certified by the district court.")

### v. Deduction Class

■ Plaintiff's claim is typical of the claims of putative class members. Plaintiff alleges Defendant has deducted a portion of Plaintiff's wages to cover costs of various travel benefits without her express written authorization. As all members of the class appear to suffer from the same or similar injury, and Defendant's alleged conduct is clearly not unique to Plaintiff, the typicality prerequisite is met. Defendant does not argue otherwise.

### 4. Adequacy of Representation

■ Finally, Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). This requirement is grounded in constitutional due process concerns; "absent class members must be afforded adequate representation before entry of judgment which binds them." Hanlon, 150 F.3d at 1020 (citing Hansberry v. Lee, 311 U.S. 32, 42–43, 61 S.Ct. 115, 85 L.Ed. 22 (1940)). The Court must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Id. (citing Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir.1978)). Both the named plaintiffs and their counsel must have sufficient "zeal and competence" to protect the interests of the rest of the class. Fendler v. Westgate–California Corp., 527 F.2d 1168, 1170 (9th Cir.1975).

Plaintiff contends there is no evidence of antagonism between her or her counsel and members of the putative class, and, if there were, any member is free to "opt-out" of the class. Motion at 20. Her counsel contend, and Defendant does not dispute, they are "experienced class action litigators." Id. Defendant, however, argues that conflicts of interest exist not only between Plaintiff and certain class members but also between her counsel and class members. Opposition at 24–27. According to SkyWest, Plaintiff may

not represent any supervisors because she accuses them of denying her requests for meal periods, while her supervisors claim she failed to follow instructions. Id. at 24. Defendant argues Plaintiff "cannot both accuse and represent at the same time." Id. at 25. Defendant claims Plaintiff's supervisors will testify against her with respect to her claim for missed meal periods. Id. at 25. In response, Plaintiff points out that at various times she acted as a supervisor, and that agents and supervisors were able to "flow" back and forth between supervisory and non-supervisory positions. Reply at 16. She also argues Defendant is ultimately responsible for the missed meals, not supervisors or station managers. Id. at 17.

Defendant's arguments have been considered and rejected by other courts. In Dukes, 474 F.3d 1214, the Ninth Circuit affirmed the district court's finding of adequate representation. Id. at 1233. There, the defendant argued a conflict of interest existed between female in-store managers and the class where the former "are both plaintiff class members and decision-making agents of the Defendant." 222 F.R.D. 137, 168 (N.D.Cal.2004). The district court disagreed, relying on Staton v. Boeing Co., 327 F.3d 938 (9th Cir.2003), wherein the court addressed whether a conflict arose if the class cuts across levels of authority in a company, with some class members supervising other class members. 327 F.3d at 958. The court in Staton rejected a per se rule and instead embraced a case-by-case approach. In Dukes, the defendant pointed out that class counsel may have to cross-examine individuals whom they represent in an attempt to "rebut [their] testimony." The court rejected that argument as a ground for not certifying the class, reasoning such scenarios would be unlikely to occur given that the "liability phase of the trial properly focuses on the existence of a general pattern" of conduct by the defendant. 222 F.R.D. at 169. So it is here.

Second, Defendant argues Plaintiff's counsel cannot represent clients adverse to each other and cannot "ethically communicate with some of their proposed clients," i.e. supervisors, particularly those whose acts

may bind SkyWest. *Id.* at 26. As an initial matter, it is unclear whether the statements of the supervisors in question may bind Sky-West. Further, accepting Defendant's argument would require a court automatically to deny certification of any class that both cuts across levels of authority and involves potentially divergent testimony. The Court declines to adopt such an approach. *See Staton*, 327 F.3d at 958.

Finally, Defendant claims Plaintiff cannot adequately represent current employees because she neither is a current employee nor has interest in current working conditions. Former employees, however, may be adequate representatives of current employees in a class action. *See, e.g., Wofford v. Safeway Stores, Inc.*, 78 F.R.D. 460, 489–90 & n. 6 (N.D.Cal.1978) ("[T]here is ample support for the position that former employees may represent present employees."). Former employees may even provide superior representation against the employer on behalf of current employees. *See Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975). For these reasons, the adequacy of representation prerequisite is met as to all classes.

### B. Rule 23(b)

After satisfying the requirements of Rule 23(a), Plaintiff must also show that at least one of the three requirements of 23(b) is met. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614–15, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Plaintiff contends, but does not convince this Court, that the requirements of Rule 23(b)(1), (2) or (3) are met.

### 1. 23(b)(1)

■■■ A class may be certified under Rule 23(b)(1) if there exists a risk of inconsistent or unfair adjudication. The Ninth Circuit has adopted an "extremely conservative view," requiring a finding that either "(1) rulings in separate actions would subject defendant to incompatible judgments requiring inconsistent conduct to comply with the judgment; or (2) a ruling in the first of a series of separate actions will 'inescapably alter the substance of the rights of others having similar claims.'" *Mateo v. M/S Kiso*, 805

F.Supp. 761, 772 (N.D.Cal.1991) (quoting *McDonnell Douglas Corp. v. U.S. Dist. Ct.*, 523 F.2d 1083, 1086 (9th Cir.1975)). It is not sufficient that a defendant may be held liable in some cases, but not in others. *McDonnell Douglas Corp.*, 523 F.2d at 1086. This strict standard is consistent with the Ninth Circuit's observation that "the stare decisis effect of a ruling in an early action is insufficient to 'inescapably bind' later courts or other members of the putative class" absent res judicata. *Mateo*, 805 F.Supp. at 773 (citing *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 467 (9th Cir.1973)).

■■■ Plaintiff claims that if the Court denies certification, "numerous actions will be filed by the putative class members" and the "results [of these actions] may vary." Motion at 21. She also hypothesizes that if one court were to hold that Defendant is not governed by the Labor Code and/or Wage Orders, while another court rules otherwise, Defendant would not know how to "legally proceed." Reply at 17. Without more, such conclusory contentions do not satisfy the strict standard of Rule 23(b)(1). Defendant correctly points out that the test is not met simply by raising a possibility that one court could reach a different conclusion on a similar issue than another court. Rather, Plaintiff must demonstrate, with respect to each class she wishes to certify, that rulings in individual actions would subject Defendant to "incompatible judgments" requiring "inconsistent conduct." In particular, Plaintiff has not explained in what way a holding that Defendant is not governed by the Labor Code would subject it to "inconsistent conduct" with respect to classes that seek only monetary damages. Plaintiff has not met her burden as to any of the proposed classes. Accordingly, the Court declines to certify any of the classes under Rule 23(b)(1).

### 2. 23(b)(2)

Certification is appropriate pursuant to Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Mt. for Cert. at 9

(citing Fed.R.Civ.P. 23(b)(2)). Certification under this section "is appropriate only where the primary relief sought is declaratory or injunctive. A class seeking monetary damages may be certified pursuant to Rule 23(b)(2) where such relief is merely incidental to [the] primary claim for injunctive relief." *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1195 (9th Cir.2001) (citations and internal quotation marks omitted); *Molski v. Gleich,* 318 F.3d 937, 947 (9th Cir.2003) (a claim for monetary damages must be secondary to the primary claim for injunctive or declaratory relief). There is no bright-line rule for determining what damages are "incidental." *Molski,* 318 F.3d at 940. Rather, the court "examine[s] the specific facts and circumstances of each case ... focus[ing] on the language of Rule 23(b)(2) and the intent of the plaintiffs in bringing the suit." *Id.* (citations omitted).

Plaintiff argues Defendant will continue to violate the law with regard to three of the five proposed classes, and that "the long, lasting impact of injunctive relief far overshadows the few years of back-pay" sought by Plaintiff. Motion at 22. In response, Defendant points out monetary damages here are not incidental to injunctive relief because Plaintiff's meal period and wage statement claims are motivated by financial gain. With respect to the AWS, voluntary shift trades and travel deduction classes, Defendant claims Plaintiff has offered no evidence (only rhetoric) that she is motivated in this litigation by the pursuit of injunctive relief. *Id.* at 30. Plaintiff responds she is committed to bringing about change at SkyWest, and it is the policy changes behind the claims that she primarily seeks. Reply at 18.

■■■ Plaintiff has not met her burden that the pursuit of monetary relief is merely incidental to the injunctive relief sought. For example, the first class—the meal periods class—cannot be certified because the class seeks *only* monetary damages. An injunction is not necessary because SkyWest changed its policy "sometime in Fall 2006" by "paying an extra hour of compensation for missed meal periods on a class-wide basis." Motion at 5. The same is true for the second class, which seeks only monetary damages.

Plaintiff contends class members are entitled to $50 per employee for the initial pay period in which SkyWest failed to provide accurate wage statements and $100 per employee for each subsequent violation, for a maximum of $4,000 per employee. Motion at 6. SkyWest began to require that employees manually clock in-and-out for meal periods sometime in the Fall of 2006. *Id.* at 7. Accordingly, certification of the first and second classes clearly is inappropriate under Rule 23(b)(2).

■■■ With respect to the remaining three classes, Plaintiff seeks both monetary damages, and injunctive relief as the conduct in question is on-going. Regarding the AWS class, Plaintiff seeks overtime pay for the alleged wrong. Motion at 2. Plaintiff also seeks overtime pay under the voluntary shift trade class. *Id.* Similarly, the deduction class seeks monetary damages. Specifically, Plaintiff requests that Defendant pay class members "all wages owed as of the date of each Plaintiff's termination of employment, plus penalty wages" in accordance with Labor Code § 203. Because all three classes seek monetary damages and injunctive relief, and Plaintiff has failed to demonstrate that monetary relief is merely incidental to the injunctive relief sought, the Court declines to certify these classes under Rule 23(b)(2).

### 3. 23(b)(3)

Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon,* 150 F.3d at 1022 (internal quotations omitted). Rule 23(b)(3) calls for two separate inquiries: (1) do issues common to the class "predominate" over issues unique to individual class members, and (2) is the proposed class action "superior" to the other methods available for adjudicating the controversy. Fed.R.Civ.P. 23(b)(3). The latter requirement requires consideration of the difficulties likely to be encountered in the management of this litigation as a class action, including whether and how the case may be tried.

"Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *See Valentino v. Carter–Wallace,*

*Inc.,* 97 F.3d 1227, 1234 (9th Cir.1996). Thus, the Court must determine whether common issues constitute such a significant aspect of the action that "there is a clear justification for handling the dispute on a representative rather than on an individual basis." 7A Wright, Miller, & Kane § 1778 (3d ed.2005). To satisfy the predominance inquiry, it is not enough to establish that common questions of law or fact exist, as it is under Rule 23(a)(2)'s commonality requirement. The predominance inquiry under Rule 23(b) is more rigorous, *Amchem Prods., Inc.,* 521 U.S. at 624, 117 S.Ct. 2231, as it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623, 117 S.Ct. 2231. The Court, therefore, must balance concerns regarding the litigation of issues common to the class as a whole with questions affecting individual class members. *Abed v. A.H. Robins Co.,* 693 F.2d 847, 856 (9th Cir.1982).

In addition, a class proponent must demonstrate the class action is superior to other methods of adjudicating the controversy. *See Valentino,* 97 F.3d at 1235. A class action may be superior where "class-wide litigation of common issues will reduce litigation costs and promote greater efficiency." *Id.* at 1243. A class action is improper where an individual class member would be compelled to try "numerous and substantial issues to establish his or her right to recover individually, after liability to the class is established." Judge William W. Schwarzer, Judge A. Wallace Tashima, & James M. Wagstaffe, *Federal Civil Procedure Before Trial,* § 10:361 (The Rutter Group, 2006).

Plaintiff lumps all five classes together in her discussion concerning whether the prerequisites of Rule 23(b)(3) are met. Regarding all classes, Plaintiff asserts without explanation that common issues exist, including whether (a) Defendant acted in good faith under Labor Code § 203, (b) the statute of limitations of Labor Code §§ 226.7 and 512 apply, and (c) Defendant's policies for the five classes constitute unfair business practices under Bus. & Prof.Code § 17200. Motion at 22–23. Aside from this brief index of common issues, Plaintiff does not explain whether as to *each class* common questions

*predominate* over individual issues. For the following reasons, the Court concludes Plaintiff has not met her burden for any of the proposed classes.

*i. Meal Period Class*

■ Defendant has shown that individual issues predominate. First, to determine which employees were not provided a timely 30–minute meal period requires a highly individualized factual inquiry. This is because many stations did not require employees to clock in-and-out for meal periods during the majority of the class period, and there are incomplete records to determine whether meal periods were taken, and, if so, for how long. Opposition at 33. Plaintiff agrees that Defendant lacked a manual system for keeping track of the length of meal periods or whether they were taken at all. Accordingly, the Court is persuaded that to determine who had missed, late or short meal periods, and how often, requires extensive individualized inquiries.

Plaintiff argues that meal period allegations can be verified simply by reviewing Defendant's time records from those stations that used a time clock during the class period. Reply at 21. Plaintiff contends most stations used the ADI timekeeping system and that all stations converted to this system by Fall of 2006. *Id.* But this argument poses several problems. First, it contradicts Plaintiff's assertion underlying her wage statements claim that Defendant had no way of keeping track of who took meal periods and for how long because it relied on an auto-deduct program. Second, analyzing the time records of the stations that used ADI during the class period will not assist in determining the membership of the class, as the time records of those stations tell the Court nothing about who in the other stations are class members.

Second, Defendant points out that different stations employed different practices with respect to meal periods. Some stations, for instance, provide agents with two 30 minute meal periods, one paid and one unpaid. Opposition at 33. This is the case with LAX. Recalde Depo. 70:23–71; Ruelas Depo. 46:6–47:1; 54:6–13, 55:15–57:9. Thus, an agent at

this station may not have had a missed meal period if he missed one but not both meal periods. Additionally, because agents and supervisors often experience "downtime" in between flights, such "downtime" may meet the requirements of Wage Order 9, even if it does not constitute a meal period. Opposition at 34. Moreover, consistent with Plaintiff's contention that SkyWest had no uniform procedure for ensuring that employees who missed meals received one hour of compensation (Reply at 20), Defendant submitted evidence that supervisors were responsible for scheduling meal periods, directing agents to take their meal periods on time, relieving agents for meal periods, and recording missed and short meal periods so that Agents were properly compensated. Finn–Walker Decl. ¶¶ 12, 22, Davies Decl. ¶ 3, Loya Decl. ¶ 4, Neve Decl. ¶ 6, Nance Decl. ¶ 13. Defendant argues that some employees, including Plaintiff, missed meal periods because they disobeyed oral directives from supervisors to take their meal periods. Opposition at 21. Additionally, Defendant points out, and Plaintiff does not dispute, that, consistent with § 11 of Wage Order 9, some putative class members waived their right to take one or more meal periods, and some of these waivers were oral while others were in writing. Esplin Decl. ¶¶ 2–3, 6–7, Cable Decl. ¶ 11, Renfrow Decl. ¶ 10, Baxter Decl. ¶¶ 4, 11. Given the evidence presented by Defendant, the Court is persuaded that individual questions, rather common issues, predominate the adjudication of this class claim.

#### ii. Wage Statement Class

Even assuming Plaintiff has standing to represent this class, the class does not pass muster under Rule 23(b)(3). Defendant claims identifying membership in this class requires a rigorous factual analysis, including whether (a) the employees received less than a 30–minute meal period, (b) the practice in question occurred during the class period and within the one-year statute of limitations, and (c) the employee actually received a statement identifying incorrect work hours. Opposition at 37. At oral argument, counsel for Defendant argued the ultimate question is whether each employee who received an allegedly incorrect wage statement was harmed. In other words, the Court must determine as to each employee whether his or her wage statement accurately documents the hours worked, including any meal periods taken. The nature of the inquiry is similar to that involved in the meal period class. Accordingly, while this class presents common questions, including whether Sky West's auto-deduct program is legal, the Court concludes on balance that the individual inquiries predominate over common ones.

#### iii. AWS Class

■ Plaintiff submitted evidence supporting her claim that there is no SkyWest corporate policy regarding AWS. Motion at 9, n. 33. According to Plaintiff, each station implements the process on its own, and SkyWest does not train its station managers how to adopt AWS. Plaintiff further contends that no station correctly implemented the AWS program during the class period. *Id.* Rather, every election was defective, and defective in different ways. While one station failed to use a secret ballot, others did not disclose the program at least fourteen days prior to voting, and still others failed to report the election results to the Department of Industrial Relations. *Id.,* n. 36. Because SkyWest does not have a common corporate policy concerning AWS implementation and station managers are left to their own devices to implement the program, the determination whether any employee was improperly required to work an AWS requires specific and detailed inquiries not applicable to the entire class.

Defendant further points out that the requirements for instituting an AWS changed sometime between 1999 and 2000. As a result, the election requirements became more stringent. However, arrangements under the rules in effect prior to 1999 remained valid under certain circumstances. Wage Order 9–90 § 3(b)(6). The change in the election requirements thus adds another layer of individualized inquiry for evaluating liability. For example, the current law allows individuals who worked an AWS as of July 1, 1999, based on a personal agreement with his or her employer, to continue to do so

if requested prior to May 20, 2000. *Id.* at § 3(B)(7).

Plaintiff does not dispute any of Defendant's arguments. In her papers and at oral argument, Plaintiff continues to assert that "the only analysis that needs to be completed is: (1) which stations used AWS shifts; and (2) which employees worked said AWS shifts." Reply at 22. The Court disagrees for the reasons explained above. Identification of such questions may satisfy the commonality requirement of Rule 23(a)(2), but without more Plaintiff has not demonstrated that common issues predominate over individual questions.

#### iv. *Voluntary Shift Trade Class*

Plaintiff claims the only analysis necessary to determine class membership is whether the employees worked daily overtime and were not paid because Defendant considered it to be "voluntary shift trade" time. Reply at 22. The Court agrees with Defendant that Plaintiff has not met the prerequisites of Rule 23(b)(3). To satisfy this requirement, it is not enough to simply identify one principal question of law or fact that is presented by the class. *See Amchem Prods.*, 521 U.S. at 623–24, 117 S.Ct. 2231 (the predominance requirement is far more demanding than the commonality requirement of Rule 23(a)). Nor is it sufficient to assert that class membership is easily determined. Plaintiff instead must demonstrate that variations in the claims of individual employees do not defeat certification because common questions predominate over any questions affecting individual members.

Defendant's list of individualized questions undermines Plaintiff's blanket assertion of predominancy. While Plaintiff is correct that this class requires the Court to determine whether hours worked pursuant to a shift trade fall under the exception set out in Wage Order 9(3)(N), aside from this common question, many highly individualized questions emerge. Such questions include, as pointed out by Defendant, whether (a) a shift trade resulted in a putative class member working more than eight hours a day but less than 40 hours or more than 60 hours a week; (b) the putative class member was paid overtime for the hours worked; and (c) the putative class member worked at a station that paid overtime for hours worked over eight in a day as a result of a shift trade. Defendant provides evidence suggesting that approximately 350 employees were, at one time or another, paid daily overtime wages even though they went into overtime because of a shift trade. Sherman Decl. ¶ 8. Accordingly, certification is inappropriate under this section.

#### v. *Deduction Class*

Plaintiff claims this class is "the most simple to certify." Reply at 24. She argues the "only factual inquiry" is to determine "if Defendant has violated the law by not collecting a written authorization for every travel deduction," as Defendant has admitted certain travel benefits resulted in payroll deductions. *Id.* Defendant contends the determination of class membership requires this Court to examine thousands of travel related transactions over five and a half years to figure out who had money deducted from their paychecks without written authorization. Opposition, at 43. Defendant further points out that due to different methods in place for reserving and paying for flight benefits, "each and every travel transaction cannot reasonably be collected and analyzed." *Id.* Rather, individual inquiry is necessary to determine membership and damages due to incomplete records. *Id.*

The Court agrees. To determine liability as to each employee requires extensive and detailed individual inquiry. Among other things, the Court would have to determine whether the employee ever took advantage of any travel benefits that resulted in a payroll deduction, and whether each deduction was authorized in writing. Plaintiff contends that Labor Code § 226(a) requires an employer to keep a record of deductions for three years, and that Defendant has testified it kept all payroll records for seven years. Reply at 24. Therefore, according to Plaintiff, class membership can easily be determined by running a report to see which employees have participated in the programs that resulted in a payroll deduction. *Id.* If Defendant is unable to produce proof that written authorization

was procured for each deduction, it is liable. *Id.* at 24–25.

Plaintiff fails to convince this Court that there is a clear justification for handling the dispute on a representative rather than on an individual basis. It appears that Plaintiff's trial plan does not allow for handling the dispute on a representative basis; instead, it more than likely calls for an individual adjudication of the claim. To determine who is a class member, whether Defendant is liable to that person, and what damages are due requires an examination of individual circumstances. Plaintiff asks this Court to require Defendant to produce proof of written authorization for every payroll deduction taken against every agent. Given such individual treatment, the Court declines to conclude class wide issues predominate over individual inquiries.[2]

## IV.

### CONCLUSION

For the foregoing reasons, Plaintiff's motion for class certification is DENIED.

**IT IS SO ORDERED.**

---

2. Because the Court concludes that none of the proposed classes is certifiable under Rule 23(b)(3), it need not address whether Plaintiff has shown that a class action is superior to other methods of adjudicating the claims.