**Diane ADOMA, Plaintiff,**

v.

**The UNIVERSITY OF PHOENIX, INC., et al., Defendants.**

**No. CIV. S–10–0059 LKK/GGH.**

United States District Court, E.D. California.

Aug. 31, 2010.

Megan Ross Hutchins, Michael Lion Tracy, Law Office of Michael Tracy, Irvine, CA, for Plaintiff.

Jason S. Mills, Morgan Lewis and Bockius LLP, Los Angeles, CA, Julia Y. Trankiem, Morgan, Lewis & Bockius LLP, Irvine, CA, for Defendants.

*ORDER*

LAWRENCE K. KARLTON, Senior District Judge.

Plaintiffs seek class certification on state law wage and hour claims. On August 13, 2010, the court declined to exercise jurisdiction over plaintiffs' federal Fair Labor Standards Act claims, pursuant to the first-to-file rule and a case proceeding in the Eastern District of Pennsylvania. (Dkt. No. 70). Because that order disposed of all federal claims and the complaint only asserted supplemental jurisdiction as a basis for jurisdiction over state law claims, the court ordered supplemental briefing regarding subject matter jurisdiction.

For the reasons stated below, the court concludes that it has jurisdiction over plaintiffs' state law claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Plaintiffs' motion for class certification under Fed. R.Civ.P. 23(b)(3) is granted.

### I. Background[1]

Defendant University of Phoenix ("UOP") is a private, for-profit educational institution that offers classes at 362 independent campuses throughout the United States, and

---

[1]. The cursory factual history in this section is provided for background only and does not form the basis of the court's decision. The legally relevant facts relied upon by the court are discussed within the analysis. This statement of facts is essentially the same as that issued in the court's order filed August 13, 2010; the facts are repeated here for convenience.

through online programs. Defendant Apollo Group, Inc. is the parent company of UOP and handled all of the administrative functions relating to payroll.

Plaintiffs Adoma and Abbaszadeh worked as Enrollment Counselors for one or both defendants. Plaintiffs allege that defendants maintained two computer systems regarding Enrollment Counselors' work. One system tracked the Counselors' availability for taking calls and another that was used to track overtime hours worked. Plaintiffs' primary claim is that the former system may be used to demonstrate that Enrollment Counselors worked overtime not recorded by the latter system; this is therefore a claim for "off-the-clock" unpaid overtime.

Plaintiffs' second theory of liability argues that defendants paid the wrong hourly rate for overtime. Enrollment Counselors were offered tuition waivers for University of Phoenix coursework. Plaintiffs argue that because the "time and a half" pay they received for overtime was calculated without including the value of this benefit, they received inadequate compensation for overtime.

Plaintiffs' third theory is that defendants caused employees to miss meal periods. It is undisputed that defendants had a written policy granting employees permission to take a 60 minute meal break on any day in which the employee worked five hours. Plaintiffs argue that despite this policy, employees were frequently obliged to miss meal periods. Finally, plaintiffs also bring state law claims for waiting time penalties and for inaccurate pay stubs.

At least two other suits have been filed claiming that the University of Phoenix failed to fully pay enrollment counselors for overtime work.

In *Sabol v. The University of Phoenix*, No. CV 09–03439–JCJ (E.D. Pa.) (*"Sabol"*), plaintiffs Erik M. Sabol and Rebecca Odom contend UOP's counselors routinely worked overtime hours without compensation, at the direction of the supervisors. On May 12, 2010, the Eastern District of Pennsylvania certified a nationwide FLSA collective action in *Sabol.* 2010 U.S. Dist. LEXIS 47145. In finding that collective certification was ap-

propriate, the *Sabol* court relied on the uniformity of Enrollment Counselors' duties and allegations a pervasive policy of requiring employees to work unpaid overtime, for example, by requiring employees to attend "lunch and learn" sessions or to work on Saturdays without counting that time as hours worked. *Id.* at *14–15. The *Sabol* court also relied on the Avaya phone records as indicia of hours worked. *Id.* at *15. By order filed August 13, 2010, this court declined to exercise jurisdiction over the FLSA claims advanced in this case, instead transferring these claims to the *Sabol* court.

In *Juric v. The University of Phoenix, Inc.*, No. 09–CV–3214 ODW (C. D.Cal.), plaintiff initially filed a putative class action University of Phoenix and Apollo solely bringing claims under California law. The complaint was filed on April 30, 2009. On January 6, 2010, the *Juric* court issued an Order Granting Stipulation for Leave to Amend. Juric subsequently abandoned his state law class claims, filing an amended complaint stating claims under the FLSA for unpaid overtime wages and other relief. *Id.* This amended complaint sought collective action certification for a class composed of enrollment and admission counselors, employed by defendants with the past three years. *Id.* On February 16, 2010, defendants filed a motion to dismiss, or in the alternative, stay the *Juric* FLSA collective action claim. *Id.* at 6. While that motion was pending, on April 27, 2010, the parties filed a notice of settlement. The settlement was finalized on June 18, and the case dismissed on June 21, 2010. No class or FLSA collective action was ever certified, and the settlement pertains to solely to defendants and the named plaintiff.

## II. Jurisdiction

■ The Class Action Fairness Act, 28 U.S.C. § 1332(d), provides that

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which … any member of a class of plaintiffs is a citizen of a State different from any defendant;

28 U.S.C. § 1332(d)(2). The court may exercise jurisdiction under this section over putative class actions in which no class certification order has yet been entered. § 1332(d)(8). The parties' filings demonstrate that defendants are citizens of Arizona, that the named plaintiffs are citizens of California, and that the exceptions to jurisdiction in paragraphs (d)(4), (d)(5), and (d)(9) do not apply.

The remaining issue is whether the $5,000,000 amount in controversy requirement has been satisfied. Under CAFA, the court aggregates potential class members' claims. § 1332(d)(6). Jurisdiction is proper unless there is a "legal certainty" that the claim is for less than this amount. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938), *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 375 (9th Cir.1997).

The potential class includes well over one thousand members. On the "off-the-clock" overtime claim for which named plaintiff Adoma seeks class certification, she alleges individual compensatory damages in excess of $34,000 and claims that evidence already produced demonstrates $4,732.47 in liability. On plaintiffs' claim for statutory waiting time penalties, plaintiffs seek up to the statutory maximum of $4,000 per employee (albeit only for a sub-class estimated to include 500 to 700 employees). Defendants argue that Adoma's evidence does not demonstrate liability, and alternatively that she is entitled to no more than $1,750 in waiting time penalties. Despite this dispute, *at least* the lesser amounts are "in controversy."

Even the reduced figures (which are less than what plaintiffs seek), if typical and aggregated, exceed the jurisdictional amount.[2] Defendants respond that the evidence does not demonstrate that other class members' claims for damages will be as high. While plaintiffs may fail to prove damages for class members in excess of these amounts, the amount "in controversy" for these claims exceeds the statutory threshold. Jurisdiction

over class claims is therefore proper under 28 U.S.C. § 1332(d). The court exercises supplemental jurisdiction over the individual claims (not at issue in the pending class certification motion) pursuant to 28 U.S.C. § 1367.

### III. Class Certification

A party seeking to certify a class must demonstrate that it has met all four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.2001). Beginning with Rule 23(b), plaintiffs assert that class certification is proper under (b)(1) or (b)(3). As explained below, (b)(1) is inapplicable here. Subsection (b)(3) requires a showing that common issues "predominate" and that class adjudication is "superior" to other methods of adjudication. Predominance overlaps with, but is not identical to, the requirements of commonality and typicality under Rule 23(a). The court therefore discusses these issues together. The remaining Rule 23(a) requirements, of numerosity and adequacy, are not in dispute. The court concludes that class certification is warranted under Rule 23(b)(3).

### A. Certification under Rule 23(b)(1) Is Inappropriate

 Fed.R.Civ.P. 23(b)(1) provides for certification of a class where individual litigation would either risk establishing "incompatible standards of conduct" for the party opposing certification or be dispositive of the interests of other potential class members. This requires more than "a risk that separate judgments would oblige the opposing party to pay damages to some class members but not to others or to pay them different amounts .... [and] is therefore not appropriate in an action for damages." *Zinser*, 253 F.3d at 1193.[3] The mere possibility that individual adjudications will have precedential or stare decisis effects is insufficient. *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 467 (9th Cir.1973). Nor is this a

---

2. *E.g.,* 1,000 * $4,700 + $1,750 * 500 = $5,575,000

3. Plaintiffs suggest that *Hilao v. Estate of Marcos,* 103 F.3d 767 (9th Cir.1996) is to the contrary.

Although *Hilao* certified a class in which damages were sought, that opinion did not discuss Rule 23(b)(1). The court discusses *Hilao* in greater detail below.

case where plaintiffs allege that the defendant has a "limited fund" that may be inadequate to pay all claims. 7AA Wright, Miller and Kane, Fed. Prac. & Proc. Civ. § 1774 (3d ed.). Accordingly, certification is not appropriate under Rule 23(b)(1).

## B. Commonality, Typicality, and Predominance

The court therefore turns to Rule 23(b)(3). Rule 23(b)(3) provides for class certification where "questions of law or fact common to class members predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." This inquiry relates to, but is in some ways distinct from, the Rule 23(a) requirement that there be "questions of law or fact common to the class" and that the representative party's claim be typical of the class claims.

In determining whether common *questions* exist, the court need not determine whether these questions will be *answered* in plaintiffs' favor. *Dukes v. Wal–Mart Stores, Inc.*, 603 F.3d 571, 594 (9th Cir.2010) (*en banc*). Determining whether there are common questions "will often, though not always, require looking behind the pleadings to issues overlapping with the merits of the underlying claims." *Id.* The court may not, however, "analyze any portion of the merits of a claim that do not overlap with the Rule 23 requirements." *Id.* As to the Rule 23 requirements, the court must perform a "rigorous analysis," but the courts "retain wide discretion in class certification decisions, including the ability to cut off discovery to avoid a mini-trial on the merits at the certification stage." *Id.* As explained below, plaintiffs have shown predominance, commonality, and typicality as to each of the five state-law claims for which plaintiffs seek class certification.

### 1. Off–the–Clock Time

■ California law requires that an employer pay for all hours that it "engage[s],

suffer[s], or permit[s]" an employee to work. *Morillion v. Royal Packing Co.*, 22 Cal.4th 575, 586, 94 Cal.Rptr.2d 3, 995 P.2d 139 (2000) (quoting a California Wage Order). This definition is equivalent to the FLSA obligation to pay for work the employer "knows or has reason to believe" the employee performs. *Id.* at 585, 94 Cal.Rptr.2d 3, 995 P.2d 139 (quoting 29 C.F.R. § 785.11 (1998)). Thus, a plaintiff may establish liability for an off-the-clock claim by proving that (1) he performed work for which he did not receive compensation; (2) that defendants knew or should have known that plaintiff did so; but that (3) the defendants stood "idly by." *Lindow v. United States*, 738 F.2d 1057, 1060–62 (9th Cir.1984) (citing *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir.1981)).[4]

Plaintiffs state that they will prove these facts using records in the Avaya computer system. The court therefore summarizes the pertinent details of this system before addressing whether the system provides a means of common proof, and if so, whether such commonalities predominate.

### a. The Avaya Phone Records System

When a potential student calls the University of Phoenix, the call is first routed to a nationwide call center located in Phoenix, Arizona. The call center representative identifies the caller's preferred region. The Avaya system then transfers the call to an Enrollment Counselor in that region who is available to receive calls.

The computer system therefore needs to track when Enrollment Counselors are available to receive calls. Enrollment Counselors first indicate their availability by logging in to the computer system using an individual code at the start of their shift. The system then assumes that the employee is available to receive calls until the employee logs out at the end of the day or unless the employee has entered one of nine "aux codes" which

---

4. In opposing class certification, defendants argue that "[t]here is no evidence that [defendants] had a widespread practice of *requiring* [Enrollment Counselors] to work off-the-clock." Opp'n to Class Cert., 12 (emphasis added). Although such a policy, if proven, would provide evidence in support of the test identified above, such a policy is neither necessary to the individual plaintiffs' claims nor for a showing of predominance.

indicate unavailability. These codes correspond to particular activities, including "meal break," "personal break," "meeting," "administrative" duties, and "student meetings." Of the nine aux codes, only the "meal break" pertains to activities for which employees are potentially not entitled to compensation.[5] If the employee is logged in, has not entered an aux code, but nonetheless does not answer the phone after three rings, the call is transferred to another Enrollment Counselor.

### b. Defendants' Arguments As to The Need for Individualized Inquiries

Defendants make four arguments as to why this system's records are poor indicators of the time an employee spent working. The court summarizes these arguments in this section, then addresses plaintiffs' reply in the following section. First, defendants argue that the login/logout times are inadequate. Defendants contend that employees sometimes login before they begin doing work and that employees sometimes perform non-employment work (such as non-compensable work on University of Phoenix courses the employee is taking) before logging out. Similarly, employees often forget to logout, in which case the employee remains logged in overnight unless the employee calls someone else who will log out for them. The phone system itself is sometimes inoperative, preventing login and logout. Finally, when employees work from non-standard locations they can be prevented from logging in and out.

Another court has held that similar computerized data could not demonstrate predominance of common issues where the data did not "take into account the possibility that an employee may not have actually worked between the punch-in time and start time or between the end-time and punch-out time." *Forrand v. Federal Exp. Corp.*, No. CV 08–1360, 2009 WL 648966, *4, 2009 U.S. Dist. LEXIS 22912, *12 (C.D.Cal. Feb.18, 2009).[6] Plaintiffs in this suit apparently concede that the login/logout times are therefore an inadequate indicator of time worked, although it is unclear whether plaintiffs forswear reliance on this information entirely.

Plaintiffs argue that rather than relying on login/logout times, they can look at records of calls made in combination with the aux codes to determine what work an employee was actually doing and when.[7] Defendants respond that the aux codes are also unreliable. Some evidence, including depositions of the named plaintiffs, indicates that employees often fail to enter the appropriate aux code or change in aux code when the employee leaves for or returns from lunch, especially when the employee is in a meeting or engaged in another "aux" activity immediately prior to or after lunch. Although defendants further argue that employees inappropriately fail to distinguish between other aux codes, the "meal break" code is the only potentially non-compensable code, so ambiguity among the others is not relevant to the reconstruction of hours worked. Plaintiffs acknowledge that employees sometimes improperly record meal periods. Plaintiffs nonetheless argue that the question is whether an employee, or employees generally, "regularly forgot to log out for lunch." The court cannot agree. Plaintiffs' claim is for failure to pay for hours actually worked, and this is a fact specific inquiry. This is not to say that individual issues predominate: trends may establish, by

---

5. Under California law, if an employee is relieved of all duty during a meal period and not obliged to remain at the work site, the meal period is not counted as hours worked. *See, e.g., Bono Enterprises, In. v. Bradshaw,* 32 Cal. App.4th 968, 38 Cal.Rptr.2d 549 (1995). As explained below, the parties dispute whether Enrollment Counselors were consistently relieved from duty during meal periods. The parties nonetheless agree that at least some meal periods were properly excluded from hours worked.

6. This was one of many difficulties relied upon by *Forrand.* That court further observed in a footnote immediately following the above that the electronic records were only available for employees explicitly excluded from the purported class. *Forrand,* 2009 WL 648966, *4 n. 7, 2009 U.S. Dist. LEXIS 22912, *12 n. 7. In light of the litany of issues in that case, it is difficult to determine which particular factors the *Forrand* court held were dispositive.

7. It appears to the court, at least initially, that reliance solely on aux codes and records of calls actually received would not account for time an employee spent waiting to receive calls when no calls were actually received, but that this time should be counted as hours worked.

a preponderance of evidence, that most days in which meal periods were not recorded, the employee in fact took no meal period. The issue, however, is whether the trend is evidence of individual days, not vice versa.

Defendants contend that these inaccuracies require individual inquires. For example, defendants argue that when phone records indicate that an employee did not take a meal period on a certain day, an individual inquiry will be required to determine whether the employee in fact took a meal period but failed to record it, such that the employee is not entitled to compensation for that time, or whether instead the employee worked through the day without taking a meal period. *Forrand,* discussed above, addressed this issue as well, holding that the need for this sort of individualized inquiry was one reason why common issues did not predominate. *Forrand,* 2009 WL 648966, \*3, 2009 U.S. Dist. LEXIS 22912, \*9 ("individualized fact inquiries are necessary to determine which mechanics did take a lunch break in accordance with the . . . record.")

Defendants' third argument about individual inquiries is that compensation is not owed for de minimis overtime, and that whether time was de minimis must be calculated on a fact specific basis. The need to determine whether overtime was de minimis does not itself preclude class or collective certification. *Kurihara v. Best Buy Co.,* No. C 06–01884, 2007 WL 2501698, \*10–11, 2007 U.S. Dist. LEXIS 64224, at \*29–31 (N.D.Cal. Aug.29, 2007).

Defendants' fourth argument is that plaintiffs have not shown that the Avaya phone records are more reliable than the records contained in the MyHR system. Employees have an opportunity and incentive to review the MyHR records to correct errors and omissions, but employees have no such opportunity with regard to the Avaya records. Moreover, on some days, the Avaya records show employees working substantially *less* than eight hours a day, but the employee

nonetheless received compensation for eight hours. Opp'n to Class Cert., at 14, n. 11. Plaintiffs have not explained how they purport to address this situation.

Summarizing these arguments, there are reasons to think that any method of reconstructing records of hours worked using the Avaya system will be imperfect. Recognition of these imperfections invites individualized inquiries into their scope. Plaintiffs acknowledge this problem, but contend that the reliability of the Avaya system, and plaintiffs' proposed use thereof, may be demonstrated using a few representative inquiries whose results will be extrapolated to the class. Plaintiffs rely principally on *Hilao v. Estate of Marcos,* 103 F.3d 767 (9th Cir.1996). The court discusses this argument in the following section.[8]

**c. Whether Representative Inquiries May Be Used**

In *Hilao,* the Ninth Circuit upheld certification of a class of "[a]ll current civilian citizens of the Republic of the Philippines, their heirs and beneficiaries, who between 1972 and 1986 were tortured, summarily executed or disappeared while in the custody of military or paramilitary groups." *Id.* at 774. The class claims alleged that the defendant Ferdinand E. Marcos, deceased and appearing through his estate, was liable for these acts. *Id.* at 771. As to liability, the primary question was whether "Marcos was liable for any act of torture, summary execution, or 'disappearance' committed by the military or paramilitary forces on his orders or with his knowledge." *Id.* at 774. This was a legal question in which common issues predominated, although the question of proximate cause for any individual's injuries was in part fact-specific. *Id.* at 776–779.

To determine compensatory damages, the *Hilao* district court used "a statistical sample of the class claims." *Id.* at 782. The court randomly selected 137 of the 9,541 potentially

---

**8.** Plaintiffs alternatively rely on Judge Patel's observation that "courts are comfortable with individualized inquires as to damages, but are decidedly less willing to certify classes where individualized inquiries are necessary to determine liability." *Kurihara,* 2007 WL 2501698,

\*9, 2007 U.S. Dist. LEXIS 64224, \*25–26 (collecting cases). This dichotomy appears to have limited use with regard to plaintiffs' off-the-clock claim, because liability and damages cannot be easily separated.

valid claims, which was determined to be a statistically significant sample. *Id.* A special master then deposed these claimants and their witnesses, to determine (1) whether the claimant had been subjected to torture, summary execution, or disappearance as defined by the jury instructions, (2) whether this harm was caused by the Philippine military or paramilitary, and (3) whether the harm occurred within the period at issue. *Id.* Based on these individual assessments, the special master recommended average compensatory damage awards for subclasses experiencing each type of injury. *Id.* at 783. The special master's findings as to the 137 individuals and to subclasses were presented to and largely adopted by the jury. *Id.* at 784. Thus, the 137 individuals received individualized compensatory damage awards and the remaining 9,404 class members received average awards. *Id.* at 784 n. 10.

On appeal, the Ninth Circuit considered only the argument that this method was improper for determining the validity of claims. The court held that appellants had waived any challenge to the propriety of this method for assessing the amount of damages. *Id.* at 784 n. 11. Even on this narrow inquiry, the court recognized that "serious questions" as to whether this method comported with due process. *Id.* at 785. The court nonetheless concluded that due process was provided. *Id.* at 786. The defendant's interest was in the aggregate amount of damages; thus, provided that the average was properly calculated, it was of no consequence to defendant that some plaintiffs would have been entitled, in individual adjudications, to more or less than this average. *Hilao,* 103 F.3d at 786. Plaintiffs' interest in the use of averages was "enormous," however, in light of the fact that individual adjudications were infeasible. *Id.* Balancing these interests under *Connecticut v. Doehr,* 501 U.S. 1, 10–11, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991) and *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the court concluded that the method did not offend the Due Process clause.

The Ninth Circuit's recent *en banc* opinion in *Dukes* affirmed the continuing validity of *Hilao.* 603 F.3d at 625–27. *Dukes* upheld certification of a class of hundreds of thousands of female Wal–Mart employees bringing claims of sex discrimination under Title VII. In concluding that the class was manageable, the court explained that "Because we see no reason why a similar procedure to that used in *Hilao* could not be employed in this case, we conclude that there exists at least one method of managing this large class action that, albeit somewhat imperfect, nonetheless protects the due process rights of all involved parties." *Id.* at 627.

#### d. Conclusion Regarding Off–the–Clock Claims

All potential class members used both the Avaya and MyHR systems. While defendants argue that the Avaya system provides an inadequate indicator of the number of hours employees actually worked, the types of arguments are common to all class members. *Hilao* appears to permit a representative inquiry to determine the magnitude of these effects, and at this stage, the court cannot distinguish *Hilao.* The remaining questions are also common. Notably, the question of whether the Avaya system gave defendants at least constructive knowledge of the employee overtime is a common question. Thus, it appears that common questions predominate. Although defendants argue that the named plaintiffs are not typical, the asserted atypicalities pertain to facts irrelevant to the above theories of liability and proof. Accordingly, plaintiffs have shown commonality, typicality, and predominance of common issues as to their state law off-the-clock claim.

#### 2. Adequacy of Overtime Compensation: Exclusion of the Educational Benefit from Calculation of the "Regular Rate"

■ The second theory of liability for which plaintiffs seek class certification is the claim that defendants compensated overtime at the wrong rate. Although plaintiffs present this claim under California law, plaintiffs cite only federal authorities, arguing that the California law is equivalent. Defendants do not dispute this characterization.

■ The FLSA requires that employees receive compensation "at a rate not less than

one and one-half times the regular rate at which he is employed" for hours worked in excess of forty per workweek. 29 U.S.C. § 207(a)(1). "Calculating the regular rate entails dividing the remuneration paid by the number of hours worked." *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 909 (9th Cir.2004). The "regular rate," for purposes of this calculation, "include[s] all remuneration for employment paid to, or on behalf of, the employee," subject to various exceptions. 29 U.S.C. § 207(e). Defendants did not include the value of the tuition benefit in this calculation, and plaintiffs contend that this exclusion was improper.

This is primarily a legal question, in that the only apparent and significant employee-specific issue is whether the employee took advantage of the educational benefit. This issue at most divides the class in two, and the two named plaintiffs are between them typical of each half of this division. As such, class issues predominate as to this theory.

Defendants' arguments against certification of this claim reduce to challenges to the merits. *Dukes* reiterates that courts may not look to the merits of claims on class certification except to the extent that such an inquiry is necessary to determine whether common questions predominate. 603 F.3d at 594.

### 3. Meal Periods

Plaintiffs further argue that defendants violated their statutory obligation to provide meal periods. The contours of this obligation are unclear, as explained by *Jaimez v. DAIOHS USA, Inc.*, 181 Cal.App.4th 1286, 1303, 105 Cal.Rptr.3d 443 (2010). Some cases have found that "employers need only 'provide' meal breaks and need not ensure the employee actually takes the meal break." *Id.* (citing *Brown v. Federal Express Corp.*, 249 F.R.D. 580 (C.D.Cal.2008)). Other cases have held that employers "have an affirmative obligation to ensure that workers are actually relieved of all duty." *Id.* (quoting

*Cicairos v. Summit Logistics, Inc.*, 133 Cal. App.4th 949, 962, 35 Cal.Rptr.3d 243 (2005), further internal quotations omitted). *Jaimez* recognized that the California Supreme Court has granted review in two cases where the Court is likely to address this issue. *Id.* (citing *Brinker Restaurant Corp. v. Superior Court* 165 Cal.App.4th 25, 80 Cal.Rptr.3d 781 (2008), review granted Oct. 22, 2008, S166350, and *Brinkley v. Public Storage, Inc.*, 167 Cal.App.4th 1278, 84 Cal.Rptr.3d 873 (2008), review granted Jan. 14, 2009, S168806).

*Jaimez* concerned class certification under California law. The court held that although the pending California Supreme Court decision would provide clarity as to the merits of the underlying claims, that resolution of those merits was unnecessary to class certification. *Id.*[9] The court went on to hold that "common legal and factual issues predominate over any individual issues with respect to the meal and rest break claims." *Id.* at 1305.

It appears to this court that the pending clarification of California law will affect the scope of the necessary inquiry and thus the potential predominance of common issues. If employers must "ensure" that meal periods are taken, the question of whether an employer's actions sufficed will likely present a common question. If, on the other hand, employers merely must make meal periods available, then even if it is determined that many employees skipped meal periods on many occasions, the court will need to inquire whether employees did so for their own purposes, or instead because the employer obliged them to. *Forrand,* 2009 WL 648966, *3, 2009 U.S. Dist. LEXIS 22912, *9.

Of course, the legal question regarding the scope of the employer's obligation is itself a common question of law. As to common questions of fact, plaintiffs contend that they will use the Avaya phone records system to demonstrate how often employees skipped meal periods. For the reasons stated above

---

9. Other courts have stayed meal period claims pending clarification from the California Supreme Court. *See, e.g., Gong–Chun v. Aetna, Inc.*, No. Civ. 1:09–cv–01995, 2010 WL 1980175, *4–5, 2010 U.S. Dist. LEXIS 56938 *15–16 (E.D.Cal. May 15, 2010) (Oberto, M.J.). *Gong–*

*Chun* involved a party's motion for a stay, and the plaintiff in that purported class action had not yet moved for class certification. Here, although the court declines to issue a stay *sua sponte,* the court notes that class certification will not limit the parties' ability to move for a stay.

it appears that this predicate factual question is susceptible to common proof. Accordingly, common issues predominate.

#### 4. Failure to Itemize Wage Statements

Plaintiffs claim that defendants violated Cal. Labor Code § 226. FAC ¶ 71–73. Section 226(a) obliges employers to provide all all employees not exempt from overtime laws "an accurate itemized statement in writing showing [inter alia] (1) gross wages earned [and] (2) total hours worked by the employee" during the pay period. An employee who suffers "injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a)" may bring a claim under Cal. Labor Code § 226(e).[10]

Defendants argue that the injury and knowledge aspects of this claim both require individualized inquiries. Defendants cite various cases that have held that class certification was improper for such a claim, but each cited case is distinguishable. Two rested on the fact that individualized issues predominated as to whether the employees worked unpaid overtime at all-but this court has found this question to be amenable to class treatment in this case. *See Jasper v. C.R. England, Inc.,* No. Civ. 08–5266, 2009 WL 873360, \*7, 2009 U.S. Dist. LEXIS 34802, \*15 (C.D.Cal. Mar. 30, 2009), *Blackwell v. SkyWest Airlines,* 245 F.R.D. 453, 468 (S.D.Cal.2007). A third held that because plaintiff had not alleged that he failed to receive adequate pay or that plaintiff had any need to reconstruct his "pay records," and because plaintiff had not alleged any other sort of injury, plaintiff had shown no injury. *Villacres v. ABM Indus.,* No. Civ. 07–5327, 2009 WL 111686, 2009 U.S. Dist. LEXIS 5545 (C.D.Cal. Jan. 14, 2009). Plaintiffs here claim that they were underpaid and prevented from realizing this fact by virtue of inaccurate wage statements.

Thus, as to injury, the court concludes that common issues predominate. It appears that the question of defendants' knowledge requires no individualized inquiry, because plaintiffs assert a constructive knowledge theory.

#### 5. Waiting Times

Finally, plaintiffs invoke Cal. Labor Code § 203, which imposes up to thirty days' wages as a penalty on an employer who "willfully fails to pay" wages owed to a former employee. As with other issues in this case, plaintiffs suggest that they will demonstrate willfulness by showing that the Avaya system gave defendants at least constructive knowledge of the unpaid overtime. For the reasons stated above, the sufficiency of this type of proof presents is a common question.

### C. Superiority of Class Adjudication

■ A party seeking class certification under Rule 23(b)(3) must also show that class adjudication is superior to other available methods. In this case, the potential class is large enough to demonstrate that individual adjudication is impractical; indeed, defendants concede that plaintiffs have satisfied the related requirement of numerosity.

Defendants primarily argue that plaintiffs' state law claims should be heard in connection with the *Sabol* FLSA collective action rather than as a Fed.R.Civ.P. 23 class. Assuming that such a procedure is permissible, the court finds that it would not be superior.[11] Admittedly, the California law and FLSA claims implicate many of the same issues.[12] Nonetheless, there are important

---

10. The court need not address defendants' argument that where an off-the-clock claim provides a predicate for a wage statement claim, denial of certification of the former compels denial of certification of the latter. The court similarly does not address defendants' challenge to the merits of the wage statement claim, i.e., the contention that by listing as "exception hours" the number of overtime hours worked, the pay stubs communicate to Enrollment Counselors that the Counselors worked 40 hours plus or minus any exception hours listed.

11. At least one court has suggested that state law claims may be heard as part of an FLSA collective action, although that court cited no authority or principle for this proposition. *Leuthold v. Destination Am.,* 224 F.R.D. 462, 470 (N.D.Cal. 2004).

12. Despite this overlap, "the FLSA does not preempt California from applying its own overtime laws." *Pacific Merchant Shipping Ass'n v. Aubry,* 918 F.2d 1409, 1418 (9th Cir.1990).

differences between the suits. Enrollment Counselors might have potentially valid claims under California law while falling outside the scope of the *Sabol* collective action. The *Sabol* action includes only employees who worked over 40 hours in a week, whereas California law provides a right to overtime for employees who work less than 40 hours in a week but more than 8 hours in a day. Moreover, the meal period, wage statement, and waiting time claims here present issues not currently before the *Sabol* court. Finally, this court is presumably more familiar with California law than is the Eastern District of Pennsylvania. For similar reasons, the court declines to transfer the California law Rule 23 class to the *Sabol* court under the first-to-file rule.

Accordingly, the court concludes that a Rule 23(b)(3) class is the superior method for treatment of plaintiffs' state law claims.

### E. Tolling

■ The court will therefore certify classes of Enrollment Counselors who worked in California. In order to determine the time period encompassed by the classes, the court must determine whether the *Juric* action tolled the statute of limitations for these claims.

■ "The filing of a class action tolls the statute of limitations as to all asserted members of the class." *Crown v. Parker*, 462 U.S. 345, 350, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983) (quotation omitted). The defendants in the *Juric* action were the same as defendants here. Plaintiffs seek tolling for the period between April 3, 2009 (the date the *Juric* action was filed) and the time this complaint was filed, on January 8, 2010.

Defendants raise several arguments regarding tolling. First, they note that in *Juric*, the amended complaint that abandoned class claims was filed on January 13, 2010, five days after the complaint in this action was filed. However, the parties in *Juric* had filed a stipulation requesting dismissal of class claims on December 30, 2009, and the court approved this stipulation and granted leave to file an amended complaint on January-

ary 6, 2010.[13] As such, the class allegations had been dismissed in *Juric* prior to commencement of the instant suit. The court grants tolling until January 6, 2010, allowing the statute of limitations to run for two days between dismissal of class claims in *Juric* and the filing of this suit.

Defendants also argue that the tolling during the pendency of one class action cannot provide tolling for a subsequent class action. Defendants provide no authority in support of this purported rule. The general principle of tolling in this case is clearly established, and if each class member is entitled to tolling, the court sees no reason why the class should not be as well. The court further notes that because the class claims were voluntarily dismissed in *Juric,* this is not a case where plaintiffs "attempt[ ] to relitigate an earlier denial of class certification, or to correct a procedural deficiency in an earlier would-be class." *Catholic Social Servs. v. INS,* 232 F.3d 1139, 1149 (9th Cir.2000).

Finally, tolling applies only to claims raised in the initial class action, and defendants argue that plaintiffs' arguments regarding the "regular rate" of pay, and the failure to include the value of educational benefits therein, were not raised in *Juric*. The court agrees. Therefore, plaintiffs are entitled to tolling as to their off-the-clock, meal period, wage statement, and waiting time theories of liability, but not the regular rate claim (or the above claims insofar as they are predicated on the regular rate claim). Although the limited scope of tolling will impose some additional complexity on the calculation of damages, the court does not find this complexity to be so great as to render the class unmanageable.

### IV. Conclusion

For the reasons stated above, plaintiffs' motion for class certification (Dkt. No. 35) is GRANTED. Named plaintiffs' counsel is appointed as class counsel. Fed.R.Civ.P. 23(g). The classes are defined as follows:

1. All current or former Enrollment Counselors who worked at least one week in the State of California for

---

13. The court takes judicial notice of the docket in *Juric.*

either The University of Phoenix, Inc. or Apollo Group, Inc. at any time between April 5, 2005 and August 13, 2010. ("California Overtime Class") and ("California Meal Break Class") and;

2. All current or former Enrollment Counselors who received at least one paycheck statement for work performed in the State of California for either The University of Phoenix, Inc. or Apollo Group, Inc. at any time between April 5, 2008 and August 13, 2010. ("California Paystub Class") and;

3. All current or former Enrollment Counselors who worked at least one week in the State of California for either The University of Phoenix, Inc. or Apollo Group, Inc. at any time between April 5, 2006 and August 13, 2010 whose employment ended at least once during that same time period. This class includes current employees who worked during the covered time period, ceased working, and then began employment again. ("California Waiting Time Class.")

4. The term "Enrollment Counselors" includes employees with the job title of "enrollment counselor" as well as any other nonexempt employee who utilized the Avaya phone system's Automatic Call Distribution system to receive calls relating to enrollment.

IT IS SO ORDERED.