**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| JACK JIMENEZ, individually and on behalf of other members of the general public similarly situated, *Plaintiff-Appellee*, <br><br> v. <br><br> ALLSTATE INSURANCE COMPANY, an Illinois corporation, *Defendant-Appellant*. | No. 12-56112 <br><br> D.C. No. 2:10-cv-08486-JAK-FFM <br><br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
John A. Kronstadt, District Judge, Presiding

Argued and Submitted
June 4, 2014—Pasadena, California

Filed September 3, 2014

Before: Ronald M. Gould and N.R. Smith, Circuit Judges,
and Edward R. Korman, Senior District Judge.[*]

Opinion by Judge Gould

---

[*] The Honorable Edward R. Korman, Senior District Judge for the U.S. District Court for the Eastern District of New York, sitting by designation.

## SUMMARY[**]

### Class Certification

The panel affirmed the district court's grant of class certification to about 800 Allstate Insurance Company employees in California who alleged that Allstate had a practice or unofficial policy of requiring its claim adjusters to work unpaid off the-the-clock overtime in violation of California law.

The panel held that the district court did not abuse its discretion in applying Fed. R. Civ. P. 23(a)(2)'s commonality requirement.

The panel also held that the class certification order did not violate Allstate's due process rights. Specifically, the panel held that the class certification order preserved Allstate's opportunity to raise any individualized defenses at the damages phase, and that the district court's approval of statistical modeling did not violate Allstate's due process rights.

### COUNSEL

James M. Harris (argued), Andrew M. Paley, Sheryl L. Skibbe, John R. Giovannone, and Kiran Aftab Seldon, Seyfarth Shaw LLP, Los Angeles, California, for Defendant-Appellant.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Alexander R. Wheeler (argued), R. Rex Parris, Kitty Szeto, Jacob L. Karczewski, and John M. Bickford, R. Rex Parris Law Firm, Lancaster, California, for Plaintiff-Appellee.

Gretchen M. Nelson, Kreindler & Kreindler LLP, Los Angeles California; and David M. Arbogast, Arbogast Bowen LLP, Los Angeles, California, for Amici Curiae The Consumer Attorneys of California, California Employment Lawyers Association, and The Impact Fund.

## OPINION

GOULD, Circuit Judge:

Allstate appeals from the district court's grant of class certification to Jack Jimenez and about 800 other Allstate employees in California who allege that Allstate has a practice or unofficial policy of requiring its claims adjusters to work unpaid off-the-clock overtime in violation of California law. We have jurisdiction under 28 U.S.C. § 1292(e), and we affirm.

## I

Allstate has 13 local offices in California, which are individually managed but under centralized leadership.[1] At those 13 offices, Allstate employs five categories of claims

---

[1] We draw the factual background for our opinion from the district court's class-certification order. The district court's factual findings are reviewed for clear error, *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1066 (9th Cir. 2014), and neither party has challenged those findings on appeal.

adjusters: Auto, Liability Determination, Casualty, Property, and a Special Investigation Unit. Some adjusters spend most of their work day in a particular office ("inside" adjusters), while others, although they are officially assigned to a particular office, spend most of their time in the field ("outside" adjusters). The amount and type of work, as well as the level and quality of claims adjusters' interaction with managers, varies between offices, between categories of adjusters, and between inside and outside adjusters.

In 2005, Allstate shifted all of its California-based claims adjusters to hourly status from exempt, or salaried, positions. Before that reclassification, claims adjusters often worked more than 8 hours per day or 40 hours per week. Since the reclassification, claims adjusters' workload has been substantially the same as it was before the reclassification, their compensation is still referred to as an annual salary, and hourly payment rates are not shared with current or prospective employees.

Claims adjusters do not keep time records. Rather, the manager of each local office has the power to file a timekeeping "exception" or "deviation" from the default expectation of 8 hours per day and 40 hours per week. This adjustment takes place when a claims adjuster's request for overtime or early leave is approved. Managers do not adjust time cards based on either their own observations of work habits or on the technological records contained in computer and telephone systems. Each local office has a non-negotiable compensation budget, which creates a functional limit on the amount of overtime a manager may approve.

Jimenez filed a class action suit alleging that Allstate had not paid overtime to current and former California-based

claims adjusters in violation of California Labor Code §§ 510 and 1198 and had not paid adjusters for missed meal breaks in violation of California Labor Code §§ 226.7 and 512(a). The complaint also made derivative claims that Allstate had not timely paid wages upon termination in violation of California Labor Code §§ 201 and 202, had issued non-compliant wage statements in violation of California Labor Code § 226(a), and had engaged in unfair competition in violation of California Business and Professions Code § 17200.

The district court certified the class with respect to the unpaid overtime, timely payment, and unfair competition claims.**[2]** It found that Jimenez had presented sufficient evidence to establish the following common questions under Federal Rule of Civil Procedure 23(a)(2):**[3]**

> (i) whether class members generally worked overtime without receiving compensation as a result of Defendant's unofficial policy of discouraging reporting of such overtime, Defendant's failure to reduce class members' workload after the reclassification, and

---

**[2]** The district court did not certify the class with respect to the meal break and wage statement claims because, in contrast to the off-the-clock claim, Jimenez did not bring forth evidence of specific policies or practices that would have caused claims adjusters as a group not to take breaks. It also excluded all members of a currently ongoing class of auto-field adjusters. Jimenez did not appeal these parts of the class certification order.

**[3]** The district court's class certification order discussed all applicable Rule 23 prongs, but because this appeal focuses on commonality, we do not repeat the district court's findings on other issues here.

> Defendant's policy of treating their pay as
> salaries for which overtime was an
> "exception"; (ii) whether Defendant knew or
> should have known that class members did so;
> and (iii) whether Defendant stood idly by
> without compensating class members for such
> overtime.

Under Rule 23(b)(3), the district court held that the common question of whether Allstate had an "unofficial policy" of denying overtime payments while requiring overtime work predominated over any individualized issues regarding the specific amount of damages a particular class member may be able to prove. Finally, it held that class treatment was a superior method of adjudication because statistical sampling of class members could accurately and efficiently resolve the question of liability, while leaving the potentially difficult issue of individualized damage assessments for a later day.

We granted permission for an interlocutory appeal under Federal Rule of Civil Procedure 23(f). *See Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005). Allstate timely perfected its appeal, and this proceeding followed.

## II

We review a district court's class certification order for abuse of discretion. *Berger*, 741 F.3d at 1066–67. A class certification order is an abuse of discretion if the district court applied an incorrect legal rule or if its application of the correct legal rule was based on a "factual finding that was illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013) (quoting *United*

*States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc)).

## III

Allstate raises two substantial legal challenges to the district court's class certification order. First, it argues that the order does not comply with Rule 23 because the common questions it identified will not resolve class-wide liability issues. Second, it argues that the district court's approval of statistical modeling violates Allstate's due process rights and conflicts with *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011). For the reasons given below, we affirm the ruling of the district court.

## A

Allstate's first argument is that the district court's class certification order misapplied Rule 23(a)(2)'s commonality requirement.[4] "The Supreme Court has recently emphasized that commonality requires that the class members' claims 'depend upon a common contention' such that 'determination

---

[4] Allstate's opening brief includes two cursory statements that the district court's order also incorrectly applied Rule 23(b)(3)'s requirement that classwide questions predominate over individual issues. That is not enough to preserve the issue for appeal. *See, e.g.*, *United States v. Stoterau*, 524 F.3d 988, 1003 fn. 7 (9th Cir. 2008) ("These contentions are general, mentioned only in passing, and are unsupported by meaningful argument. Accordingly, they are waived."); *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) ("We review only issues which are argued specifically and distinctly in a party's opening brief. We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim."). However, if we were to reach that claim, we would affirm the district court's predominance holding for many of the same reasons that we affirm the result of its commonality analysis.

of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke.'" *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (quoting *Dukes*, 131 S.Ct at 2551) (internal alteration omitted).  These common questions may center on "shared legal issues with divergent factual predicates [or] a common core of salient facts coupled with disparate legal remedies." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  We agree with the district court's determination that the three common questions identified in this case have that capacity because of their close relationship with the three prongs of the underlying substantive legal test.

This analysis does not turn on the number of common questions, but on their relevance to the factual and legal issues at the core of the purported class' claims.  *Compare Dukes*, 131 S.Ct. at 2556 ( "We quite agree that for purposes of Rule 23(a)(2), even a single common question will do.") (internal quotation marks omitted), *Wang v. Chinese Daily News*, 737 F.3d 538, 544 (9th Cir. 2013) ("Plaintiffs need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution."), *Mazza*, 666 F.3d at 589 ("[C]ommonality only requires a single significant question of law or fact."), *with Dukes*, 131 S.Ct. at 2551 ("What matters to class certification is not the raising of common 'questions'—even in droves.") (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L.Rev. 97, 132 (2009) (alteration omitted)). As *Dukes* and all of our subsequent caselaw have made clear, a class meets Rule 23(a)(2)'s commonality requirement when the common questions it has raised are "apt to drive the resolution of the litigation," no matter their number. *Abdullah*, 731 F.3d at 962 (quoting *Dukes*, 131 S.Ct. at 2551.)

Whether a question will drive the resolution of the litigation necessarily depends on the nature of the underlying legal claims that the class members have raised. *Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014) ("commonality cannot be determined without a precise understanding of the nature of the underlying claims."); *see also Abdullah*, 731 F.3d at 958–63 (comparing a common question to the elements of California's "nature of the work" standard in an employment classification class action). Under California law, there are three elements of an off-the-clock claim of the type raised by the class here: "[A] plaintiff may establish liability for an off-the-clock claim by proving that (1) he performed work for which he did not receive compensation; (2) that defendants knew or should have known that plaintiff did so; but that (3) the defendants stood idly by." *Adoma v. Univ. of Phoenix, Inc.*, 270 F.R.D. 543, 548 (E.D. Cal. 2010) (internal quotation marks omitted).

Each of the three common questions recognized by the district court will drive the answer to the plaintiffs' claims on one of these three elements of their claim. First, the district court found that the plaintiffs' arguments had raised the common question of whether the class had worked unpaid overtime as a result of "Defendant's unofficial policy of discouraging reporting of such overtime, Defendant's failure to reduce class members' workload after the reclassification, and Defendant's policy of treating their pay as salaries for which overtime was an "exception." Proving at trial whether such informal or unofficial policies existed will drive the resolution of prong one of the *Adoma* test.[5] The second

---

[5] Allstate argues that its formal policies which call for employees to be paid for all overtime worked are lawful, and that the alleged informal "policy-to-violate-the-policy" does not exist. This argument is

common question was whether Allstate "knew or should have known" that the class was working unpaid overtime, which plaintiffs allege could be shown through either the testimony of managers who saw the class members work schedules or through an analysis of the telephone and computer systems used by class members.    Resolution of this common question–whether in favor of the class or in favor of Allstate–will tend to show whether Allstate is liable under the second *Adoma* prong.**6**  Finally, the third common question, whether "Defendants stood idly by," repeats verbatim the standard from the third *Adoma* prong.  The close connection between the common questions noted by the district court and the legal test it must apply to determine whether plaintiffs can make out an off-the-clock claim under California law means

---

appropriately made at trial or at the summary judgment stage, as it goes to the merits of the plaintiffs' claim. *See* I*n re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 722 F.3d 838, 857 (6th Cir. 2013) (noting that if a defendant has a strong argument against classwide liability, it "should welcome class certification" as that allows it the opportunity to resolve claims of all class members at once).  Whether any of these common questions are ultimately resolved in favor of either side is immaterial at this class certification stage, where we determine whether any answer that the questions could produce will drive resolution of the class' claims.

**6** Allstate also argues that the district court improperly expanded the second element of California's three part test for "off-the-clock" claims by allowing plaintiffs to proceed on a theory that Allstate "could have known" rather than "knew or should have known" about the alleged unpaid overtime. *See Adoma*, 270 F.R.D. at 548.  "We review de novo a district court's interpretation of law, including state law." *Trishan Air, Inc. v. Fed. Ins. Co.*, 635 F.3d 422, 426-27 (9th Cir. 2011).  The district court's order recited the correct legal standard and noted reasons that the evidence brought forth by Jimenez and the class had the potential to meet that burden as properly understood.  The district court did not err in its application of  California law.

that these are precisely the kind of common questions that Rule 23(a)(2) and *Dukes* require.

The district court did not abuse its discretion in determining that these three common questions contained the "glue" necessary to say that "examination of all the class members' claims for relief will produce a common answer to the crucial question[s]" raised by the plaintiffs' complaint. *Dukes*, 131 S. Ct. at 2552.

**B**

Allstate's second contention is that the district court's class certification order violated Allstate's due process rights in two ways. First, it argues that the order improperly limited Allstate's ability to raise affirmative defenses at trial,[7] and second, it argues that the use of statistical sampling among class members to determine liability contradicts *Dukes*.

In *Dukes*, the Supreme Court reversed certification of a class of employees because the employer was "entitled to individualized determination of each employee's eligibility for backpay." 131 S.Ct. at 2560. In making this holding, the Court relied on two key factors. First, it noted as significant that its holding was made in the context of a class certified under Rule 23(b)(2), which contains fewer procedural safeguards than Rule 23(b)(3). *Id.* And second, it looked at

---

[7] Allstate raised three potential affirmative defenses to the class' claims: that class members performed only *de minimis* amounts of off-the-clock overtime, that knowledge of any substantial off-the-clock work could not reasonably be imputed to managers, and that class members may have unreasonably failed to pursue compensation for their off-the-clock work. The merits of these claims are not before us in this appeal, and we take no position on them.

the statutory context of Title VII suits, which explicitly includes affirmative defenses relating to motive and alternative explanations. *Id.* at 2561 (noting the need for class procedures to "give[] effect to . . . statutory requirements"). In a more recent case, *Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013), the Supreme Court expanded on the notion that individualized determinations of certain questions were necessary to comply with the Fifth Amendment's Due Process Clause. Reversing the Third Circuit's affirmance of class certification under Rule 23(b)(3), the Court held that a methodology for calculation of damages that could not produce a class-wide result was not sufficient to support certification. *Comcast*, 133 S.Ct. at 1434–35 (noting the "nearly endless" permutations of potential damages issues arising out of the model's flaws).

However, none of the problems identified by *Dukes* or *Comcast* exist in the district court's certification order here.[8] Since *Dukes* and *Comcast* were issued, circuit courts including this one have consistently held that statistical sampling and representative testimony are acceptable ways to determine liability so long as the use of these techniques is not expanded into the realm of damages.

In this circuit, *Leyva v. Medline Industries,* Inc., 716 F.3d 510 (9th Cir. 2013), is the controlling case. There, we held

---

[8] The parties contest whether *Dukes* and *Comcast* apply in the same fashion to classes certified under Rule 23(b)(2) as opposed to Rule 23(b)(3) classes and whether there may be a potential distinction between statutory and non-statutory affirmative defenses. We need not resolve these doctrinal complications to resolve this case. Assuming without deciding that all of the requirements of *Dukes* apply here, the class certification order was not an abuse of discretion or a violation of Allstate's due process rights.

that a district court's denial of class certification was an abuse of discretion. *Id.* at 513–14. The district court had denied certification because individual issues predominated on damages calculations. We reversed because we recognized that "damages determinations are individual in nearly all wage-and-hour class actions," *id.* at 513 (quoting *Brinker Rest. Corp. v. Superior Court*, 273 P.3d 513, 546 (Cal. 2012), and "[i]n this circuit . . . damage calculations alone cannot defeat class certification," *id.* (quoting *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010). We therefore held that the district court had applied the wrong legal standard, a per se abuse of discretion, *id.* at 514 (citing *Hinkson*, 585 F.3d at 1263.

Similar positions have been adopted by those of our sister circuits that have faced related issues after the Supreme Court's *Dukes* and *Comcast* decisions. *In re Whirlpool* affirmed a grant of class certification in a consumer class action alleging product liability claims. 722 F.3d at 850–61. In that case, the Sixth Circuit held that, "no matter how individualized the issue of damages may be, determination of damages may be reserved for individual treatment with the question of liability tried as a class action," a position that it said held true even when some consumers might have no harms at all. *Id.* at 853–55 (internal quotation marks omitted). *Butler v. Sears, Roebuck and Co.*, 727 F.3d 796, 801–02 (7th Cir. 2013) affirmed class certification for a group of plaintiffs alleging very similar product liability claims as those in *Whirlpool*. Judge Posner's opinion for the Seventh Circuit concluded that "[i]t would drive a stake through the heart of the class action device . . . to require that every member of the class have identical damages." *Id.* at 801. He noted that the existence of a "single, central, common issue of liability" was sufficient to support class certification, and

the defendant was free to address complications with the district court during the damages phase. *Id.* at 801–02. More recently, the Fifth Circuit in *In re Deepwater Horizon*, 739 F.3d 790, 810–17 (5th Cir. 2014) affirmed certification of a settlement class for those harmed by the an oil spill in the Gulf of Mexico. BP challenged the proposed settlement on the grounds that the claims from thousands of plaintiffs in the Gulf region were too disparate to meet Rule 23(a)(2)'s commonality requirement. The Fifth Circuit rejected this argument, holding that the proper focus of the analysis was the defendant's conduct, and "even an instance of injurious conduct" satisfies Rule 23, *Dukes*, and due process. *Id.* at 810–11. So long as the plaintiffs were harmed by the same conduct, disparities in how or by how much they were harmed did not defeat class certification. *Id.* We conclude that these cases are compelling. And their reasoning is consistent with our circuit precedent in *Leyva*.[9]

In crafting the class certification order in this case, the district court was careful to preserve Allstate's opportunity to

---

[9] The California Supreme Court's recent decision in *Duran v. U.S. Bank Nat'l Association*, 325 P.3d 916 (Cal. 2014) is not to the contrary. While it reversed the result of a trial that had used statistical sampling and representative testimony to find in favor of a class of employees alleging mis-classification under California labor laws, it did not place a wholesale bar on the use of such tactics. *Id.* at 939 ("We need not reach a sweeping conclusion as to whether or when sampling should be available as a tool for proving liability in a class action.") Rather, it noted serious problems with the size of the sample, the way it was selected, and the application of sample evidence to the larger class. *Id.* at 940–45. These errors required reversal because the sample itself was so flawed as to violate the defendant's due process rights and California class certification principles. *Id.* at 945. That is not the question we face in this appeal.

raise any individualized defense it might have at the damages phase of the proceedings. It rejected the plaintiffs' motion to use representative testimony and sampling at the damages phase, and bifurcated the proceedings. This split preserved both Allstate's due process right to present individualized defenses to damages claims and the plaintiffs' ability to pursue class certification on liability issues based on the common questions of whether Allstate's practices or informal policies violated California labor law.

Further, the district court carefully analyzed the specific statistical methods proposed by plaintiffs. It struck some of the expert testimony offered by plaintiffs as insufficiently empirically supported and took pains to ensure that the statistical analysis it did accept conformed to the legal questions to which the analysis was being applied. Unlike the putative class in *Comcast*, 133 S.Ct. at 1434, which relied on statistical analysis that was not closely tied to the relevant legal questions, or in *Duran*, 325 P.3d at 940, which used a sample of 20 names drawn from a hat without evidence showing that the number of names chosen or the method of selection would produce a result that could be "fairly extrapolated to the entire class," the district court has accepted a form of statistical analysis that is capable of leading to a fair determination of Allstate's liability, and preserved the rights of Allstate to present its damages defenses on an individual basis. The district court did not abuse its discretion by entering its class certification order, and did not violate Allstate's due process rights.

**IV**

The district court's class certification order is affirmed. The case is remanded to the district court for further proceedings consistent with this opinion.

**AFFIRMED**.